UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MIMEDX GROUP, INC.,

      Plaintiff/Counter-Defendant,

v.

MICHAEL FOX,

      Defendant/Counter-Plaintiff.

_____/

CPN BIOSCIENCES, LLC,

      Movant.

_____/

Case No. 8:18-mc-00012-T-17CPT

Northern District of Illinois
Case No. 1:16-cv-11715-MSS

## ORDER

      Before the Court is *CPN Biosciences, LLC's Motion for Protective Order.* (Doc. 1).   For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

      This proceeding stems from ongoing litigation in the Northern District of Illinois between MiMedx Group, Inc. (MiMedx), a developer and marketer of wound care products, and its former employee, Michael Fox (Fox).   *See MiMedx v. Fox,* Case No. 1:16-cv-11715-MSS (N.D. Ill.) (the underlying action).   According to the submissions in this matter, Fox worked for MiMedx from July 2012 until December 2016, first as Sales Director and then as a Vice President.   (Doc. 1 at 2;

Doc. 6 at 1).   MiMedx ultimately fired Fox in late December 2016, allegedly as a result of certain unauthorized disclosures Fox made.   (Doc. 1 at 2; Doc. 6 at 3).

Approximately three months later, in April 2017, CPN Biosciences, LLC (CPN) – which is also involved with wound care products – hired Fox to serve as its Vice President of Business Operations.   (Doc. 1 at 2; Doc. 2 at 1-2; Doc. 6 at 3). According to Fox, his compensation in that positon included an annual salary of $200,000 plus commissions equaling 2% of all national sales.   (Doc. 6 at 4).

Fox alleges that, during his tenure at CPN, the company's Chairman, Mihir Taneja, and its Vice President, Adam Miscik, were faced with the specter of being sued by MiMedx because CPN had hired a number of former MiMedx employees, including Fox.   According to Fox, Taneja and Miscik engaged in a series of communications with MiMedx to stave off such litigation.   *Id.* at 4-5.   Fox alleges that, during the course of these communications, CPN sought to convince MiMedx that CPN's products did not compete with those of MiMedx and that suing CPN for its employment of former MiMedx employees was neither necessary nor justified. *Id.* at 4.   Fox further asserts that, despite these efforts, Taneja and Miscik eventually decided in July 2017 to terminate Fox – but not other former MiMedx employees at CPN – to avoid any "legal drama" with MiMedx.   *Id.* at 5-6.   CPN disputes this contention, claiming instead that it fired Fox for poor performance.   (Doc. 1 at 3).

MiMedx initiated the underlying action against Fox in the Northern District of Illinois shortly after firing him in December 2016, alleging, among other claims, that Fox had violated a non-compete agreement he apparently had with MiMedx.

(Doc. 1-1).   Fox thereafter counterclaimed against MiMedx for, *inter alia*, tortious

interference with his employment at CPN.   *See* (Doc. 1-2).   Although Fox's

counterclaim references his employment at CPN, CPN is not a party in the

underlying action.

On October 12, 2017, Fox served CPN with a subpoena *duces tecum* seeking

various categories of documents.   *See* (Doc. 6 at 7-8).   Of relevance here, these

categories included:

(a)    All documents and communications sent or received by CPN's Vice
President, Adam Miscik, relating to MiMedx or its former employees,
including Fox;

(b)    All documents and communications sent or received by CPN's
Chairman, Mihir Taneja, relating to MiMedx or its employees,
including Fox;

(c)    All documents and communications between CPN and MiMedx;

(d)    All travel or other miscellaneous expenses relating to CPN's travel to
meet with MiMedx at certain locations; and

(e)    All documents and communications concerning the competitiveness or
noncompetitiveness of CPN's products with those of MiMedx.

*Id.*; *see also* N.D. Ill. Case No. 1:16-cv-11715-MSS, Doc. 186 at 25

Unable to reach an agreement over the proper scope of this subpoena, CPN

and Fox brought the matter before the Illinois District Court, which ruled from the

bench on March 22, 2018.   (Doc. 20-2 at 15-26).   During the course of that ruling,

the Illinois District Court found that, based on considerations of relevance,

proportionality, and burden, a number of Fox's requests were "quite broad" and

imposed an "excessive" temporal scope.   *Id.* at 21.   The Illinois District Court

accordingly required CPN to produce only the following items:

> (a)   Documents during the time period May through September 2017
>        concerning whether CPN or MiMedx consider each other to be
>        competitors;
>
> (b)   Documents during the time period May through September 2017
>        regarding any communications between CPN and MiMedx
>        concerning Fox or other former MiMedx employees who then became
>        employed by CPN;
>
> (c)   Documents during the time period May through September 2017
>        concerning CPN's reasons for terminating Fox and for not terminating
>        other former MiMedx employees; and
>
> (d)   Documents during the time period May through September 2017
>        concerning any potential business relationship between MiMedx and
>        CPN.

*Id.* at 21-25.   The Illinois District Court thereafter entered a Minute Order

memorializing its oral ruling.   *See* N.D. Ill. Case No. 1:16-cv-11715-MSS, Doc. 202

(March 22, 2018, Order).

Prior to the Illinois District Court's ruling, on February 9, 2018, Fox served a

subpoena for the deposition of CPN's corporate representative pursuant to Federal

Rule of Civil Procedure 30(b)(6).   (Doc. 1-3).   That subpoena listed 17 topics about

which Fox sought to depose CPN's representative, a number of which were similar

to the requests delineated in Fox's earlier subpoena *duces tecum*.   Although CPN was

agreeable to five of the topic areas, it objected to the rest.

As a result, on February 23, 2018, CPN – which is located in Largo, Florida –

filed the instant motion in this district seeking to quash or modify Fox's Rule 30(b)(6)

subpoena and for an award of fees and costs incurred in bringing the motion.   (Doc.

1).   In support of this relief, CPN asserted that Fox's subpoena sought irrelevant and confidential information and was unduly burdensome.   *Id.*   On March 9, 2018, Fox responded to CPN's motion, arguing that the areas of inquiry were appropriate and that he was entitled to an award of fees and costs of his own.   (Doc. 6).

On April 4, 2018, this Court held a telephonic hearing on CPN's motion.   At that hearing, it became evident that the parties had not conferred on the matter since the issuance of the Illinois District Court's March 22, 2018, Order.   Accordingly, the Court directed counsel to revisit the matter in light of the March 22, 2018, Order to see if they could narrow the areas of their disagreement.   *See* (Doc. 14).

At the continuation of the telephonic hearing on April 6, 2018, Fox and CPN advised that they had conferred in good faith and had reached a resolution with respect to several of the challenged topics.   The parties also reported they had agreed that the temporal scope for the disputed areas of inquiry should begin on May 1, 2017, consistent with the Illinois District Court's March 22, 2018, Order.   They advised, however, that they were unable to agree as to whether the temporal scope's end-date should be September 30, 2017, as argued by CPN and as set by the Illinois District Court, or December 31, 2017, as asserted by Fox.

On April 9, 2018, in accordance with this Court's directive, Fox filed a Notice with this Court containing, among other attachments, a copy of the transcript of the Illinois District Court's March 22, 2018, proceeding.   (Doc. 20).

## DISCUSSION

Federal Rule of Civil Procedure 26(b)(1), as amended in 2015, governs the scope of permissible discovery.   That rule provides, in pertinent part, that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."   Fed. R. Civ. P. 26(b)(1).   The factors for the court to consider in assessing relevance and concomitant proportionality include "the importance of the issues at stake in the action," "the importance of the proposed discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."   *Id.*

While such considerations are not new, the 2015 amendments to Rule 26(b) "crystalize[ ] the concept of reasonable limits on discovery through increased reliance on the commonsense concept of proportionality."   Chief Justice John Roberts, *2015 Year-End Report on the Federal Judiciary 6* (2015) (available at https://www.supremecourt.gov/publicinfo/year-end/year-endreports.aspx). Accordingly, where – as here – judicial intervention is sought to resolve a disputed discovery matter, the court is tasked with answering the threshold question of whether the requested discovery is relevant and proportional to any party's claim or defense.   *See* Fed. R. Civ. P 26 advisory committee's note to the 2015 Amendment. Indeed, the 2015 amendments to Rule 26(b) note the need for judges to take an active role in defining the proper scope of discovery where appropriate.   *See id.* (2015 amendment to Rule 26(b) "again reflects the need for continuing and close judicial

6

involvement in the cases that do not yield readily to the ideal of effective party management").

The principles governing the scope of discovery under Rule 26(b) apply equally to Rule 45 subpoenas on nonparties, such as the subpoena at issue in this proceeding. *See Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC*, 2007 WL 4139466, at *5 (N.D. Ga. Nov. 14, 2007); 9A Wright & Miller, Federal Practice & Procedure § 2459 (3d ed.) (noting discovery standards outlined in Rule 26 are applicable to Rule 45) (collecting cases). These principles, however, are not the only considerations a Court must weigh in evaluating the propriety of a Rule 45 subpoena. Of relevance here, Rule 45(d)(3) provides that, on a timely motion, a court *must* quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies," or that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii), (iv). Rule 45(d)(3) additionally provides that a court *may* – but is not required to – quash or modify a subpoena that requires "disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i). A nonparty seeking to quash or modify a subpoena under Rule 45(d)(3) bears the burden of showing that it is entitled to the requested relief. *Malibu Media, LLC v. Doe*, 2015 WL 574274, at *3 (M.D. Fla. Feb. 11, 2015). If the nonparty satisfies this burden, the court may require that trade secrets or other confidential information be produced under specified conditions if the party serving the non-party subpoena shows a substantial need that could not otherwise be met

without undue hardship, and ensures that the subpoenaed entity will be reasonably compensated.   Fed. R. Civ. P. 45(d)(3)(C).

Following their recent good faith conference, Fox and CPN represented at the continuation of the hearing on April 6, 2018, that there are nine areas of inquiry in the Rule 30(b)(6) subpoena that remain in dispute:[1]

- Topic No. 1: All documents and communications Adam Miscik sent to or received from anyone since December 29, 2016, concerning or relating to MiMedx, including MiMedx's Current Employees, MiMedx's Former Employees, and the competitive or noncompetitive nature of CPN's products or services relative to MiMedx's products or services.

- Topic No. 2: All documents and communications Mihir Taneja sent to or received from anyone since December 9, 2016, concerning or relating to MiMedx, including MiMedx's Current Employees, MiMedx's Former Employees, and the competitive or noncompetitive nature of CPN's products or services relative to MiMedx's products or services.

- Topic No. 3: All documents and communications between CPN and MiMedx since December 29, 2016 to present, including without limitation any demand letters, threats to sue, and settlement communications between CPN and MiMedx.

- Topic No. 4: Any formal or informal agreements CPN entered into with MiMedx since December 29, 2016.

- Topic No. 5: All travel or other miscellaneous expenses that relate to CPN's meeting(s) with MiMedx since December 29, 2016.

- Topic No. 6: All things of value, whether tangible or intangible, CPN has received from MiMedx since December 29, 2016.

- Topic No. 11: CPN's gross monthly sales revenues since January 1, 2017.

- Topic No. 12: CPN's monthly revenue projections for Fiscal Year 2018.

---

[1] For the sake of clarity, the Court denominates each of these topic areas using the same numerical system employed in the subpoena.

- Topic No. 14: CPN's products, including their purposes and applications. (Doc. 1 at 5-7, 12).[2]

CPN objects to Topic Nos. 1-6 on the grounds of relevance, and to Topic Nos. 11, 12, and 14 on the grounds that they improperly seek trade secrets and/or confidential business information. Fox counters that CPN has not satisfied its burden of showing that it is entitled to any relief with respect to these topic areas.

After careful consideration of the matters presented, including the pertinent records from the underlying action, CPN's motion to quash the Rule 30(b)(6) subpoena in its entirety is denied. CPN clearly has not met its burden under Rule 45(d)(3) of showing that it is entitled to such sweeping relief. Nor has CPN seriously argued as much, particularly at the hearing. Indeed, CPN agreed at that hearing that it would produce a Rule 30(b)(6) witness on certain topic areas. *See* n.2, *infra*. The fact that CPN has already produced documents that fall within the ambit of at least some of these topic areas – as it acknowledged at the hearing[3] – further undermines the contention that the entire subpoena should be quashed.

That being said, the Court agrees with CPN that several of the topic areas should be modified. The Illinois District Court's March 22, 2018, Order provides helpful guidance in this regard with respect to the first five topic areas. As alluded

---

[2] CPN does not object to five of the topic areas listed in the Rule 30(b)(6) subpoena, namely Topic Nos. 7-10 and 17. In addition, as alluded to above, CPN and Fox have resolved their disputes over Topic Nos. 13, 15, and 16 as a result of their recent good faith conference. Accordingly, the Court does not address these areas.

[3] CPN represented at the hearing in this regard that it had already disclosed the documents covered by the Illinois District Court's March 22, 2018, Order.

to above and as discussed at the hearing, Topic Nos. 1-5 largely mirror a number of the requests denominated in the subpoena *duces tecum* Fox previously issued to CPN. *Compare* Doc. 186 at 25 in N.D. Ill. Case No. 1:16-cv-11715-MSS, with Doc. 1-3 at 7-8.   As also noted above, the Illinois District Court narrowed that subpoena *duces tecum* to four categories of documents and imposed a temporal scope of May through September 2017 – which includes the time frame Fox was employed by CPN – based on considerations of relevance, proportionality, and the burden imposed upon CPN. N.D. Ill. Case No. 1:16-cv-11715-MSS, Doc. 202; *see also* (Doc. 20-2 at 16-25).

After an independent review of the record, this Court finds it appropriate to narrow the first five topic areas of the Rule 30(b)(6) subpoena using the same limitations as those imposed by the Illinois District Court in its March 22, 2018, Order.   In this Court's view, these limitations strike a reasonable balance between the interests of both the party, Fox, and the nonparty, CPN.   Moreover, these limitations more closely align the topic areas with the claims and defenses asserted in the underlying action and are proportional to the needs of the case.   They also have the added benefit of being consistent with the manner in which the Illinois District Court is managing discovery in the underlying action.

On the other hand, Topic No. 6, which relates to remuneration CPN has received from MiMedx, does not fall neatly within the bounds of the prior subpoena *duces tecum* or the areas devised by the Illinois District Court in its March 22, 2018, Order.   Given the claims and defenses asserted in the underlying action and the issues presented there, this Court finds it reasonable to allow inquiry regarding this

topic, provided that it is limited to the time frame between May 2017 and September 2017.

Fox's argument – propounded at the hearing – that this Court should set a temporal scope for the first six topic areas that extends through December 31, 2017 (rather than September 2017) is unpersuasive.   In support of this contention, Fox proffered at the hearing that it had recently received an October 2017 communication involving CPN and MiMedx, and speculated that there might be additional such communications between these two entities in November and December 2017.   Because the October 2017 communication upon which Fox relied was not part of the record here, however, the Court advised Fox that it was disinclined to consider the communication unless Fox provided it to the Court in a supplemental submission and allowed CPN a reasonable opportunity (consisting of a few days) to respond to it.   Fox declined the Court's invitation and, to this Court's knowledge, has not brought this communication to the attention of the Illinois District Court.[4]   In light of all of the above and based on the record before it, this Court finds that there is an insufficient basis to deviate from the May 2017 through September 2017 time frame.

With respect to Topic Nos. 11 and 12, the Court finds that some modification is appropriate as well.   The proffered evidence fairly reveals that CPN maintains

---

[4] Fox's counsel indicated at the hearing in this regard that he intended to file a motion for reconsideration with the Illinois District Court seeking to extend the temporal scope of their subpoena *duces tecum* to December 31, 2017, based on the proffered communication.   As of this writing, Fox has not done so.

revenue and financial information, which – even if it is not a trade secret – may properly be considered confidential commercial information that CPN endeavors to protect through confidentiality agreements and other measures. *See* (Doc. 2); *see also* (Doc. 1 at 12-13). Fox nonetheless asserts that the particular information it seeks regarding CPN's 2017 gross sales revenues and CPN's 2018 projected gross sales revenue is pertinent to Fox's claim for compensatory damages, insofar as his commissions at CPN were tied to 2% of the company's national gross sales revenue. (Doc. 6 at 18). Fox further asserts that "[n]o one other than CPN has access to this sales information." *Id.* While CPN conceded at the hearing that Fox's commissions were, in fact, based upon 2% of CPN's collected gross revenue, it argues that disclosure of the requested revenue figures should be disclosed at a later date or revealed only to the parties' damages expert so that the information can be better protected.

Based on the record before it, this Court finds that Fox has a substantial need for the requested information that cannot otherwise be met without undue hardship. In balancing Fox's need for this information against CPN's understandable interest in keeping the information confidential for proprietary and/or competitive reasons, this Court finds that a limited inquiry into CPN's gross revenue from May 2017 through the date of the Rule 30(b)(6) deposition is appropriate. The inquiry, however, should be consistent with the terms of Fox's compensation agreement and

in line with the intended frequency of the commission payments.[5]   At this stage of the proceedings, CPN's gross revenue information can be adequately protected using the confidentiality procedures already in place in the underlying case, *see* N.D. Ill. Case No. 1:16-cv-11715-MSS, Doc. 50, and/or by further agreement of counsel.[6]

As for Topic No. 14, this Court finds that this area is sufficiently limited and presents little to no danger of disclosure of confidential information and/or trade secrets.   CPN makes no showing that this sought-after information is confidential or protected trade secret information.   Indeed, CPN lists its products and their descriptions on its public website.   *See* www.cpnbio.com (last visited April 18, 2018). In addition, as discussed at the hearing, Fox indicated that he has no intention of inquiring into matters such as patents, chemical formulae, or other proprietary information regarding the composition of CPN's products.   In short, the Court finds no bar to a general inquiry into CPN's products, including their general purposes and applications.

## CONCLUSION

For all of the reasons discussed above, it is hereby ORDERED that:

(1)      *CPN Biosciences, LLC's Motion for Protective Order* (Doc. 1) is GRANTED in part and DENIED in part.

---

[5] For instance, if Fox was to be paid commissions monthly, the inquiry should be limited to monthly gross revenue figures; if Fox was to be paid commissions annually, the inquiry should be limited to annual gross revenue figures.
[6] While Rule 45(d)(3)(C)(2) contemplates that "the subpoenaed person will be reasonably compensated," CPN has presented no basis for this Court to make a finding as to what constitutes reasonable compensation under these circumstances.   The Court accordingly imposes no such obligation on Fox at this time.

13

(2)     In addition to the topic areas to which CPN does not object (*i.e.* Topic Nos. 7-10 and 17) and the topic areas to which the parties have reached an agreement and/or agreed-upon modification (*i.e.* Topic Nos. 13, 15, and 16), CPN shall provide a Rule 30(b)(6) witness to testify to the following areas of inquiry:

(a)     All documents and communications during the time period May through September 2017 concerning whether CPN or MiMedx consider each other to be competitors;

(b)     All documents and communications during the time period May through September 2017 regarding any communications between CPN and MiMedx concerning Fox or other former MiMedx employees who then became employed by CPN;

(c)     All documents and communications during the time period May through September 2017 concerning CPN's reasons for terminating Fox and for not terminating other former MiMedx employees;

(d)     All documents and communications during the time period May through September 2017 concerning any potential business relationship between MiMedx and CPN;

(e)     All things of value, whether intangible or intangible, CPN has received from MiMedx during the time period May through September 2017;

(f)     CPN's gross monthly sales revenues during the time period May 2017 through the date of the Rule 30(b)(6) deposition; and

(g)     CPN's products, including their purposes and applications.

(3)     The parties' respective requests for attorneys' fees and costs incurred are DENIED, as there has not been a sufficient showing that such an award is justified.

(4)     In accordance with the Illinois District Court's March 22, 2018, Order and the procedures applicable to the underlying case, CPN may designate

appropriate portions of the Rule 30(b)(6) deposition as confidential or attorney's eyes only pursuant to the confidentiality order in place in the underlying case, *see* N.D. Ill. Case No. 1:16-cv-11715-MSS, Doc. 50, or as otherwise agreed to by counsel.

DONE and ORDERED in Tampa, Florida, this 18th day of April 2018.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record